# EXHIBIT A

## 2UP GAMING PLC STOCK PURCHASE AGREEMENT

This STOCK PURCHASE AGREEMENT (the "Agreement") is made as of this 15th day of May, 2013 by and between 2UP Gaming PLC (hereinafter referred as the "Corporation"), a United Kingdom Corporation, by and through its authorized representative AC Acquisition LLC., a New Jersey corporation, (hereinafter referred to as the "2AC"), with its US business address of 17 State Street, Suite 4000, New York, NY 10004; and Mr. Travis A. Roemmele, (hereinafter referred as the "Buyer"). The Corporation and the Buyer are sometimes herein referred to individually as "Party" or collectively as the "Parties".

### WITNESSETH

**WHEREAS**, the Corporation was incorporated in 2011 and has authorized capital of 350,000,000 shares of common stock, par value £.10; and

**WHEREAS**, the 2AC desires to Issue to the Buyer 42,000 shares of Common Stock of the Corporation; and

**WHEREAS**, the Buyer desires to acquire from 2AC 42,000 shares of Common Stock of the Corporation upon the terms and conditions set forth herein;

**NOW THEREFORE**, and in mutual consideration of the premises and covenants hereinafter set forth, and for other good and valuable consideration, the Parties hereto, intending to be legally bound, hereby agree and covenant as follows:

### ARTICLE I

### STOCK ISSUANCE

**1. ISSUANCE.** 2AC hereby agrees to issue to the Buyer 42,000 shares of Common Stock of the Corporation. The Common Stock is issued in consideration for paid in capital that the Buyer will contribute to 2AC in the amount of $21,000.

1




**2. TRANSFER RESTRICTIONS ON SHARES.** As a material inducement for the sale of the Common Stock of the Corporation at a discount, the Buyer hereby agrees with the Corporation not to sell, assign, transfer, convey, pledge, or subject the same to any lien, encumbrance or other security interest or otherwise dispose of any shares of Common Stock, for a period of one (1) year from the date of mutual execution of this agreement. Upon expiration of the one (1) year transfer restriction stated herein, the Buyer is free to sell the Common Stock of the Corporation as follows:

(a) The Buyer shall notify 2AC in writing of the proposed sale, specifying the number of such shares proposed to be sold by the Buyer, the name of the proposed purchaser or purchasers and the proposed cash purchase price per share (the "Purchase Price"). The number of such shares so specified will be referred to as the "Offered Shares."

(b) Thereupon, 2AC shall have the right and option, for a period of ten (10) days after receipt of such written notice, to purchase all (but not less than all) of the Offered Shares at the Purchase Price per share. 2AC shall exercise such right and option to purchase such Offered Shares by mailing a written notice to the Buyer within such 10-day period. The closing of any such purchase of such Offered Shares by 2AC shall be held at the offices of 2AC on the date specified in such notice of exercise, which date shall be a business day, not more than 60 days after the date such notice is given by 2AC to the Buyer. At such closing, the Buyer shall deliver the Offered Shares, duly endorsed for transfer, against payment of the Purchase Price per share.

(c) If 2AC shall not elect to purchase the Offered Shares as provided above, the Buyer shall be entitled, for a period of 180 days after the expiration of the 10-day period referred to in Section 2(b) above, to sell all (but not less than all) of the Offered Shares to the purchaser or purchaser specified in the original notice given by the Buyer to 2AC, at the Purchase Price per share. Upon the consummation of any such sale, such Offered Shares shall there after no longer be subject to any provision of this Agreement, but if such sale shall not be completed as contemplated by this Section 2(c), such Offered Shares shall again be subject to the provisions of this Section 2 as if such original notice had not been given by the Buyer.

2

 

## ARTICLE II

## WARRANTS REPRESENTATIONS AND COVENANTS

As a material inducement to Buyer to enter into this Agreement, the Corporation makes the following representations, warranties, and agreements to and with Buyer:

**1. CORPORATE STATUS.** The Corporation is a corporation duly organized, validly existing and in good standing under the laws of the United Kingdom.

**2. POWER AND AUTHORITY.** The Corporation has all requisite corporate power and authority and all material licenses, permits and authorizations (i) to own assets and carry on business as presently conducted; (ii) to execute, deliver and perform the obligations under this Agreement; and (iii) to issue to Buyer the Stock purchased hereunder. This Agreement has been duly and validly executed and delivered by the Corporation enforceable according to its terms, except where enforceability may be limited by laws regarding bankruptcy, insolvency, or reorganization as now or hereafter in effect relating to or affecting creditors' rights generally. The Chairman & Chief Executive Officer of the Corporation is duly authorized and empowered to execute this Agreement on behalf and for the Corporation.

**3. CAPITALIZATION.** The Corporation's authorized capital stock consists of 350,000,000 shares of Common stock, par value £.10. There are no shares of any other class or series of capital stock or preferred stock issued and outstanding. All outstanding shares of capital stock are, and the Stock when issued according to the terms of this Agreement will be, validly issued and outstanding, fully paid and non-assessable. A current shareholder list giving the names, addresses, and number of shares owned by each shareholder of the Corporation is available from the Corporation or its counsel upon request by the Buyer.

**4. SUBSIDIARIES.** The Corporation has no subsidiaries and does not own any capital stock, security, partnership interest or other right or interest of any kind in any corporation, partnership, joint venture, association, or other entity.

3



**5. CONFLICT OR BREACH.** The Corporation is in compliance in all material respects with all applicable federal, state, and local laws and regulations. The Corporation is not presently in violation or breach of any of the terms, conditions or provisions of its Article of Incorporation, its bylaws, or any material contract, agreement, lease or instrument to which its is a party or by which it is bound; nor will the execution, delivery and performance by the Corporation of its obligations under this Agreement cause a conflict, violation or breach of any term, condition, or provision in it's Articles of Incorporation, bylaws or any material contract, agreement, lease or instrument to which it is a party or by which it is bound.

**6. FINANCIAL STATEMENTS.** The Corporation has furnished (or will furnish as soon after Settlement as such are available) Buyer its financial statements which (i) are, or will be furnished, complete and correct;(ii) were, or will be, prepared in accordance with the Corporation books and records; (iii) present, or will present, fairly its financial position and results of operations for the periods indicated as of the dates thereon; (iv) have been, or will be prepared according to generally accepted accounting principles consistently applied.

**7. TAXES.** The Corporation has filed or, when appropriate during its operation will file, all applicable federal, state, and local tax returns required to be filed to date; and has paid all taxes, interest, penalties and assessments required to have been paid to date. The Corporation has not been advised that any of its tax returns have been or are being audited as of the date hereof.

**8. NO CONSENTS.** No permit, consent, approval or authorization of, or filling with, any Governmental regulatory authority or agency is required of the Corporation in connection with the execution, delivery, and performance of this Agreement or the consummation of the transactions contemplated hereby.

**9. LITIGATION.** There are no pending or threatened suits, legal proceedings, claims or Governmental investigations against or with respect to the Corporation or its properties or assets; nor, to the best of the Corporation's knowledge, is there any basis for any such suit, legal proceeding, claim or Governmental investigation.

4

## ARTICLE III

## WARRANTS REPRESENTATIONS AND COVENANTS BUYER

As a material inducement to the Corporation to enter into this Agreement, Buyer makes the following representations, warranties, and agreements to and with the Corporation:

**1. BUSINESS FAMILIARITY.** Buyer is familiar with the business of the Corporation and acknowledges that he has been provided with the opportunity to ask questions of and obtain such information as he deem necessary regarding the Corporation and its operations. Buyer is relying on his investment advice regarding his purchase of the Stock and understands the merits and risks associated with his acquisition of the Stock and investment in the Corporation.

**2. INVESTMENT.** Buyer is acquiring the Stock pursuant to this Agreement for investment purposes only, for his own account, and not for distribution or resale in any transaction or series of transactions that would be in violation of Federal securities laws, or the securities laws of any State.

Buyer acknowledges and agrees that he is acquiring the Stock pursuant to the terms of an **INVESTMENT LETTER** substantially in the form attached hereto as Schedule "A". Buyer further acknowledges and agrees that any proposed disposition of the Stock shall be pursuant to the terms and conditions of this Agreement.

**3. BINDING OBLIGATION.** This Agreement has been executed and delivered by Buyer and constitutes a valid and legally binding obligation of the Buyer, enforceable in accordance with it terms, subject, as to enforcement, to laws regarding bankruptcy, insolvency or reorganization as now or hereafter In effect relating to or affecting creditors rights generally.



## ARTICLE IV

## MISCELLANEOUS

**1. CERTIFICATE ISSUANCE.** 2AC shall issue (or cause to be issued) certificates for shares in the name of the Buyer. The certificates shall be issued directly by the Corporation's transfer agent within ten (10) days of settlement.

**2. WAIVER.** Neither the failure nor delay on the part of either Party to exercise any right, remedy, power or privilege ("Right") under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any Right preclude any other or further exercise of the Right to any occurrence be construed as waiver of such Right with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the Party asserted to have granted such waiver.

**3. CONTROLLING LAW.** This Agreement and all questions relating to its validity, interpretation, performance, and enforcement (including, without limitation, provisions concerning limitations of actions), shall be governed by, and construed according to the laws of the United Kingdom.

**4. NOTICES.** All notices, requests, demands and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given only delivered if sent by courier service (such as Federal Express, or by other messenger) or when posted if sent by the United States mails, registered or certified mail, postage prepaid, return receipt requested, addressed as set forth below:

If to 2AC:  
2AC Acquisition LLC  
17 State Street, Suite 4000  
New York, NY 10004

If to the Buyer:  
Mr. Travis A. Roemmele  
35 Caroline Ave.  
Pompton Plains, NJ 07444

6



Any Party may alter the address to which communications or copies are to be sent by giving notice of such change of address in conformity with the provisions of this Subsection for the giving of notice.

**5. BINDING NATURE.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, personal representatives, successors and assigns, except that no Party may assign or transfer its rights or obligations under this Agreement without the prior written consent of the other Party hereto.

**6. EXECUTION IN COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which shall together constitute the same Instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signature of all Parties hereto.

**7. SEVERABILITY.** The provisions of this Agreement are independent of and separable from each other, no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be declared invalid, illegal, or unenforceable in whole or in part by a court of competent jurisdiction.

**8. ENTIRE AGREEMENT; AMENDMENT.** This Agreement contains the entire understanding among the Parties hereto with respect to the subject matter thereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as herein contained. The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any terms hereof. This Agreement may not be modified or amended other than by an agreement in writing signed by the Parties hereto.

**9. HEADINGS.** The headings in this Agreement are for convenience only, form no part of this Agreement, and shall not affect its interpretation.

**10. GENDER.** Words used herein, regardless of the number and gender specifically used, shall be deemed, and construed to include any other number, singular or plural, and any other Gender, masculine, feminine or neuters, as the context indicates are appropriate.

7



**IN WITNESS HEREOF**, the Parties have executed and delivered this Agreement the date first above written.

| | |
|---|---|
| **2AC ACQUISITION LLC** <br> **"2AC"** | **MR. TRAVIS A. ROEMMELE** <br> **"THE BUYER"** |
| BY: *(signature)* | BY: *Travis Roemmele* |

8

## SCHEDULE "A" INVESTMENT LETTER

**TO THE BOARD OF DIRECTORS OF 2UP GAMING PLC:**

The undersigned hereby represents to 2UP Gaming PLC. (The "Corporation"), that:

(1) The shares of the Corporation's Common Stock (the Securities") that are being acquired by the undersigned are being acquired for his own account and for investment.

(2) The undersigned acknowledges that he has been furnished with disclosure documents sufficient to determine the risks of such an investment.

(3) The undersigned further acknowledges that he has had an opportunity to ask questions of and receive answers from duly designated representatives of the Corporation concerning the terms and conditions pursuant to which the Securities are being offered.

(4) The undersigned acknowledges that he has been afforded an opportunity to examine such documents and other Information set forth in the Stock Purchase Agreement (the "Agreement").

(5) The undersigned hereby represents that by reason of his knowledge and experience in financial and business matters in general, and Investments in particular, he is capable of evaluating the merits and risks of an investment in the Securities.

(6) The undersigned hereby represents that he capable of bearing the economic risks of an investment in the Securities; and that he fully understands the speculative nature of the Securities and the possibility of such loss.

(7) The undersigned hereby represents that his financial condition is such that he is under no present or contemplated future need to dispose of any portion of the Securities to satisfy any existing or contemplated undertakings, need, or indebtedness.

(8) The undersigned further agree that the Corporation shall have the right to issue stop-transfer instructions to its transfer agent and acknowledges that the Corporation has informed the undersigned of its intention to issue such instructions in the event or noncompliance with the terms and conditions of The Agreement.

Very Truly Yours,

_____
Mr. Travis A. Roemmele

DATE: 5/21/2013