# Weber Gallagher

20 Independence Blvd, Suite 201  
Warren, NJ 07059

T (973) 242-1364  
F (973) 242-1945

May 11, 2015

**VIA CERTIFIED, RRR MAIL**  
2AC Acquisition, LLC  
17 State Street, Suite 4000  
New York, NY 1004

Direct Dial: (973) 854-1065  
Email: aseijas@wglaw.com

Vincent Crandon  
14 James Brite Circle  
Mahwah, NJ 07430

RE: **Stock Purchase Agreement between 2AC Acquisition, LLC and Travis Roemmele**  
**Our File Number: 0081825**

Dear Sirs:

Please be advised that this firm has been retained to represent the interest of Travis Roemmele with respect to his purchase of 42,000 shares of 2AC common stock pursuant to a Stock Purchase Agreement dated May 21, 2013 (the "Agreement").

Demand is hereby made for the return of Mr. Roemmele's $21,000 for the below reasons.

According to the Agreement, Mr. Roemmele purchased 42,000 shares of common stock from 2AC in the amount of $21,000. This was done through its agent and principal, Vincent Crandon. Pursuant to Article IV of the Agreement, "2AC shall issue (or *caused* to be issued) certificates for shares in the name of the Buyer. The certificates shall be issued directly by the corporation's transfer agent within (10) days of settlement." 2AC is the author of this Agreement.

Since the inception of this Agreement, Mr. Roemmele has tried on several occasions, verbally and in writing, to acquire some proof of his company ownership so that he may otherwise sell his shares or realize a profit or calculate a loss as per the Agreement. As of today, Mr. Roemmele has been provided no adequate proof that he is the owner of 42,000 shares of 2AC stock. Simply put, Mr. Roemmele has received nothing of tangible or marketable value in exchange for his $21,000.

Based upon this, there are several legal theories which all justify the return of Mr. Roemmele's $21,000. First, it can reasonably be established that there was never a legally binding contract

between the parties because Mr. Roemmele received no consideration in exchange for his $21,000. Even in the simplest of arrangements, as a shareholder Mr. Roemmele would be entitled to some type of regular corporate reports identifying him as a shareholder together with the value of his shares. This did not occur. Under this theory it could be argued that 2AC and/or Mr. Crandon misrepresented themselves and converted Mr. Roemmele's $21,000.

In the alternative, if there was a legally binding contract, 2AC has violated it because it did not transfer anything, namely the stock certificates, to Mr. Roemmele within ten (10) days of May 21, 2013. By language of its own choosing, 2AC, "shall issue (or *caused* to be issued)" stock certificates in Mr. Roemmele's name by May 31, 2013. The obligation to get these stock certificates to Mr. Roemmele was placed squarely on 2AC by its own wording in that 2AC either had to issue or *cause to be issued* Mr. Roemmele's stock certificates. The notion that Mr. Roemmele had to open some type of specialized account in order for these certificates to be issued is found nowhere in the Agreement and is contradicted by the Agreement's own language.

In addition to theses causes of action, Mr. Roemmele can also successfully argue the equitable causes of action for breach of the covenant of good faith and fair dealing, detrimental reliance and unjust enrichment. Essentially, Mr. Roemmele paid 2AC and Mr. Crandon $21,000 and received nothing in return. He has spent the last two years $21,000 out-of-pocket with no ability to sell, transfer, prove ownership or otherwise dispose of these 42,000 shares.

Finally, as you are aware, the legal theories of misrepresentation and the like allow Mr. Roemmele to seek punitive damages against 2AC and Mr. Crandon in his personal capacity.

We do not believe the legal theories here are complicated. In any lawsuit brought against 2AC or Mr. Crandon, Mr. Roemmele will seek lost profits, interest, attorneys' fees and costs and be forced to refer to this matter to any Federal and State regulatory commissions for violating the rules governing the transfer of stock certificates, in addition to the return of his $21,000.

Thus, in an effort to avoid years of litigation and the costs associated with it, Mr. Roemmele will accept the return of his $21,000. Frankly, this is the most economic and reasonable solution to the situation. 2AC can simply purchase these 42,000 shares for $21,000 and it avoids years of litigation and all the other aforementioned damages and remedies at law.

Mr. Roemmele will accept $21,000 made payable via cashier's check to him. If said payment is not received within ten days, we will have no alternative but to file suit.

Very truly yours,

Anthony P. Seijas

APS/ckv
cc:   Travis Roemmele
Index# 40